## SVENSON v. ARUNDEL CORP.
### No. 18337.

United States District Court,
E. D. New York.
Feb. 28, 1952.

Jacob Rassner, New York City, by Thomas J. Doyle, Duluth, Minn., for libellant.

Foley & Martin, New York City, by Christopher E. Heckman, Edward J. Ryan, New York City, for respondent.

INCH, Chief Judge.

This is an action by a seaman against his former employer to recover for a back injury allegedly sustained by him while working aboard the tugboat, Joseph V. Hogan, in September 1941. The action was not commenced until March, 1947.

The libel alleged two causes of action: the first, based on negligence under the authority of the Jones Act, 46 U.S.C.A. § 688, and also unseaworthiness under the general maritime law; and the second for maintenance and cure.

The case was tried without a jury. At the opening of the trial libellant was permitted to amend the libel to delete that part of the first cause of action which alleged negligence under the Jones Act, so that the first cause of action then contained only allegations of unseaworthiness under the general maritime law. Libellant was further permitted to amend the libel by adding allegations to the effect that the reason for the delay of approximately six years in bringing the action was the reliance by libellant upon respondent's representations that libellant had no cause of action against respondent.

Respondent moved, on the opening statements, to dismiss the libel as amended on the ground that it was barred by the Statute of Limitations and laches, and that the facts alleged to overcome the presumption of prejudice would not, if proven, be sufficient ground for excusing libellant's delay in starting the action. Decision was reserved on that motion. Defendant's answer, among other things, pleaded laches as an affirmative defense. As will appear more fully below, libellant has failed to establish by credible evidence that there was justifiable excuse for his delay in commencing this action, and respondent's defense of laches, together with other defenses, must be sustained.

Libellant failed to produce a doctor at the trial, and it was stipulated that the trial proceed on the question of liability, and if the Court should find respondent liable, then the question of damages would be tried at a later date.

Libellant was the only witness in his own behalf, and respondent called only Arthur S. Peterson, the master of the vessel at the time of the alleged accident, but who was no longer in respondent's employ at the time of the trial.

■ The substance of libellant's testimony concerning the happening of the alleged accident was that on September 4, 1941 he was hosing the upper deck of the tug, forward of the pilot house, and that the deck was "covered with canvas and well painted and * * * just as slick as glass", so that with "the rolling or pitching" of the boat he was caused to fall from the upper to the lower deck thereby injuring his back. However, this testimony was directly contradicted by Captain Peterson, and a clear issue of fact is presented both as to the occurrence of the alleged accident and as to the unseaworthiness of the vessel.

After observing both witnesses and considering all the evidence presented, I find that libellant has failed to sustain the burden of proof on either issue.

■ Libellant testified that at the time he slipped and fell he was directly in front of the pilot house where Captain Peterson was steering the vessel, and that the Captain should have seen him fall. On the other hand, the Captain, who I find worthy of belief, testified that he never saw any such incident, and if such a thing had occurred, it would surely have been within his vision because it was very close to where he was standing at the wheel. He denied that libellant had ever spoken to him about the accident and that he learned of libellant's claim for the first time in 1945. It is to be noted that after the alleged accident libellant continued to perform the duties of a deckhand for respondent until September of 1943 and that he subsequently obtained a mate's license and performed the duties of mate for another tugboat concern, the Moran Company, from December 1943 until September 1945. Although he testified to having received medical attention from private doctors, he did not all during these periods make any claim for injury against respondent or seek medical attention at any marine hospital. Libellant's excuse for not having done so was that he relied on the representations of Captain Peterson to the effect that respondent was not liable for libellant's injury. Captain Peterson, whose testimony, as I have said, appeared to me to be honest and straightforward, denied that any such representations were made by him to libellant. But, even if it were to be assumed that such representations were made, which I do not find to be the fact, it is incredible that libellant relied upon them during the almost six years which elapsed between the happening of the accident and the commencement of this action. Libellant was 26 years of age at the time of the alleged accident and had been around boats since he was 15 years old. His father had been an engineer of vessels for years, and his uncle was a licensed master and a marine superintendent for the Moran Company. Admittedly, libellant spoke to his father about the accident and also told his uncle that he had fallen and that he was in pain. Moreover, libellant was a member of the Tugboat Union and was employed continuously on tugboats from the time of the alleged accident in 1941 until September 1945, and it is difficult to accept his testimony that he did not at any time discuss the circumstances of his accident with the other crewmen on the numerous tugboats on which he served. Finally, it is significant that the records of the Monmouth Memorial Hospital, where libellant was admitted in September 1945 for observation and X-rays, contain a history signed by libellant's own doctor stating that libellant had "no history of accident or injury. Had a previous attack of pain of the same nature about 2 years ago." In view of the above proof, I cannot find that libellant sustained a fall or injury on respondent's vessel on the date claimed.

Furthermore, the preponderance of evidence plainly favors a finding that the vessel was seaworthy. In contradiction to libellant's statement that the canvas covering on the deck was as "slippery as glass", there is substantial proof that this portion of the deck was in frequent daily use by libellant and other crew members, that the type of work libellant was doing at the time of the alleged accident was the same type of work he did almost daily before and after the alleged accident, that this canvas covering was the customary type of covering used on vessels of this kind, that there were never any complaints about the canvas or the slipperiness of the deck, that the deck and canvas had been renewed some time between 1936 and 1941, that it was painted about twice a year, and that such treatment for a period of five or six years would not make the canvas slippery. Consequently, I find on the evidence presented that the deck and canvas covering were at all material times safe and suitable and that respondent's vessel was not unseaworthy.

■ Libellant continued to perform his regular duties as a seaman with respondent and the Moran Company until he was operated on for a "herniated disc" of the spine on April 27, 1946. He seeks maintenance and cure from respondent for a period of 28 months after the operation when he did not work, and he also requests an opportunity to present medical evidence as to the need for future maintenance and cure. However, libellant performed his regular duties as a seaman for two years after he left respondent's employ and before he underwent the operation, and I cannot find on this record that the condition of libellant's back and his consequent hospitalization and treatment were caused by any injury, or the aggravation of any injury, sustained aboard respondent's vessel.

Respondent is entitled to a decree dismissing the libel. Submit proposed findings of fact and conclusions of law in accordance herewith.